IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ROBERT S. GARNER**, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**GLOBAL PLASMA SOLUTIONS, INC.**,<br><br>*Defendant*. | CIVIL ACTION NO. 1:23-cv-3097<br><br><br>C.A. No. 1:21-cv-00665-SB<br>Case filed in the United States District Court for the District of Delaware |

### GLOBAL PLASMA SOLUTIONS, INC.'S BRIEF IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS

**I.  INTRODUCTION**

Robert Garner ("Garner") filed a putative class action against Global Plasma Solutions, Inc. ("GPS") in federal court in Delaware alleging that GPS made false representations regarding the safety and efficacy of its air cleaning products and he relied on those representations to purchase a GPS product for his parents' home.  Of relevance to the instant motion, Garner specifically contends that GPS falsely represented that its products do not produce harmful byproducts, including volatile organic compounds ("VOCs").  To prove that GPS's products produce byproducts and VOCs, Garner relies exclusively on a study conducted by nonparties Yicheng Zeng ("Zeng") and Brent Stephens ("Stephens") on the same GPS product that Garner purchased.  Accordingly, GPS served document subpoenas on Zeng and Stephens requesting documents related to that study and other studies they conducted specifically on GPS's products and technology, some of which Zeng and Stephens produced in response to subpoenas issued by GPS in other litigation.  Zeng and Stephens have refused to produce any responsive documents and object to the requests on grounds of relevance, undue burden, and infringement of academic

1

freedom. Zeng and Stephens' objections are without merit, and GPS respectfully requests that this Court, as the court in the district where compliance is required, enforce the subpoenas and compel compliance therewith.

## II. FACTUAL AND PROCEDURAL BACKGROUND

GPS designs and sells air cleaning products that implement its patented needlepoint bipolar ionization (NPBI™) technology. GPS's products are installed in the heating, ventilation, and cooling system of a building or residence and clean the air by generating ions that interact with viral and other particles in the air.

On May 7, 2021, Garner filed a putative class action complaint against GPS in the United States District Court for the District of Delaware asserting eight claims and seeking to certify national, multi-state, and Maryland classes (the "Delaware Litigation"). *Garner v. Global Plasma Solutions, Inc.*, Civil No. 1:21-cv-00665-CFC (D. Del.), Dkt. 1.[1] Following the Delaware court's order on GPS's motion to dismiss, Garner's only remaining claim is for deceit in Count I. Dkts. 19, 20. Garner alleges that in March 2021, he purchased a GPS-FC48-AC device, one of GPS's NPBI™ products, for his parents. Decl. Kelly Warlich ("Warlich Decl.") at Ex. A, Interrog. 1; Dkt. 1, ¶ 162. Garner alleges that he purchased the device in reliance on GPS's representations that its products clean the air without producing harmful byproducts, remove VOCs from the air, are effective against the virus that causes COVID-19, and are supported by sound independent testing. Dkt. 1, ¶ 165. Garner alleges that GPS's representations were false and he would not have purchased the device if he had known they were false. Dkt. 1, ¶ 170.

To prove that GPS's products produce harmful byproducts, Garner relies on a study by Zeng and Stephens titled *Evaluating a Commercially Available In-Duct Bipolar Ionization Device*

---

[1] Throughout this brief, docket numbers refer to filings in the Delaware Litigation unless otherwise indicated.

*for Pollutant Removal and Potential Byproduct Formation* published in the journal Building and Environment and available online on March 7, 2021 (the "IIT Study"). Dkt. 1, at 40–45 & n.81; Warlich Decl. at Ex. B (Dep. Robert Garner) at 143:13–20, 187:7–20, 192:4–5, 194:4–20; Warlich Decl. Ex. C. In the IIT Study, Zeng and Stephens tested a GPS-FC48-AC device—the same device that Garner purchased—for the purported purpose of assessing its efficacy in removing particles and its potential to form byproducts. Warlich Decl. at Ex. C (IIT Study), at GPSDE_0200280783. The IIT Study concluded that GPS's product had no effect on overall particle removal and increased the concentration of VOCs. Ex. C, at GPSDE_0200280793 to 94.

The IIT Study suffered from several fundamental flaws and presented contradictory, cherry-picked data. Warlich Decl. Ex. B, at 193:13–195:21, 198:2–16, 199:7–200:3; Ex. C, at GPSDE_0200280790, GPSDE_0200280802 to 03. On February 23, 2022, Zeng and Stephens published a Corrigendum to the IIT Study in an attempt to correct and clarify some of these issues. Warlich Decl. Ex. D.

Zeng and Stephens also conducted a second study titled *Evaluation of an In-Duct Bipolar Ionization Device on Particulate Matter and Gas-Phase Constituents in a Large Test Chamber* published in Building and Environment and available online on February 1, 2022 (the "Second IIT Study"). Warlich Decl. Ex. E. In the Second IIT Study, Zeng and Stephens tested the same GPS-FC48-AC device for impacts on particles and VOCs. Warlich Decl. Ex. E, at GPSDE_0200280809. The Second IIT Study concluded that GPS's product had no impact on the concentration of VOCs and increased particle removal efficiency in conjunction with filtration, contrary to the IIT Study. Ex. E, at GPSDE_0200280817 to 18.

On April 10 and April 13, 2023, GPS served Stephens and Zeng with document subpoenas requesting: (a) documents and communications related to the IIT Study, Corrigendum, and Second

IIT Study; (b) studies, research, tests, and investigations that Zeng and Stephens conducted or participated in related to ionization, GPS, GPS's products, or NPBI™ and documents and communications related to the same; (c) documents and communications related to the efficacy of GPS's products or NPBI™; and (d) documents and communications related to the production or nonproduction of byproducts associated with GPS's products or NPBI™. Warlich Decl. ¶ 12, Exs. F, F-1, and G. The relevant time period for the subpoenas was limited to March 1, 2019 to the present. Ex. F, Attachment A, at 1; Ex. G, Attachment A, at 1.

On April 18, 2023, Stephens and Zeng served their objections to the subpoenas. Warlich Decl. Ex. H. Stephens and Zeng object that the subpoenas seek irrelevant documents and information, impose an undue burden, and "chill academic freedoms." Ex. H, at 1.

On May 5, 2023, counsel for GPS met and conferred by phone with counsel for Stephens and Zeng regarding their objections. Warlich Decl. ¶ 17. Nevertheless, Stephens and Zeng refuse to produce any responsive documents. Accordingly, GPS requests that this Court enter an order enforcing the subpoenas and compelling compliance therewith.

### III. LEGAL STANDARD

Rule 45 "permits a party to issue a subpoena directing a non-party to 'produce designated documents, electronically stored information, or tangible things in that person's possession.'" *Breuder v. Bd. of Trs.*, 2020 U.S. Dist. LEXIS 144272, at *12 (N.D. Ill. Aug. 12, 2020) (quoting Fed. R. Civ. P. 45(a)(1)(A)(iii)). "Rule 45 contains no exclusion or exemptions for individuals that cannot be subject to a subpoena." *Roman v. City of Chicago*, 2023 U.S. Dist. LEXIS 2509, at *15 (N.D. Ill. Jan. 6, 2023). The scope of information that may be sought from a nonparty pursuant to a Rule 45 subpoena is the same as the scope of permissible discovery under Rule 26. *Sherman v. Brandt Indus. USA Ltd.*, 2021 U.S. Dist. LEXIS 258665, at *5–6 (C.D. Ill. July 15, 2021). "Thus, a subpoena may seek any non privileged relevant information." *Langen v. Wells Fargo*

*Bank, N.A.*, 2012 U.S. Dist. LEXIS 138177, at *5 (C.D. Ill. Sept. 26, 2012). Information is relevant "if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence." *Architectural Iron Workers' Loc. No. 63 Welfare Fund v. Legna Installers Inc.*, 2023 U.S. Dist. LEXIS 66607, at *9 (N.D. Ill. Apr. 17, 2023) (quotation marks omitted). Under Rules 26 and 45, "relevance is construed broadly." *Id.*

Rule 45(d)(2)(B) "permits an individual who is subject to a subpoena to object to production." *Whitlow v. Martin*, 2008 U.S. Dist. LEXIS 46111, at *10 (C.D. Ill. June 12, 2008). "Once the party serving the subpoena receives a written objection, it may move for an order compelling production" pursuant to Rule 45(d)(2)(B)(i). *Trs. of the Chicago Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, 2023 U.S. Dist. LEXIS 13410, at *15 (N.D. Ill. Jan. 26, 2023). The nonparty resisting compliance with the subpoena bears the burden of showing that the requests are improper. *Elwell v. Blade*, 2020 U.S. Dist. LEXIS 105843, at *23 (S.D. Ind. June 16, 2020).

IV. **ARGUMENT**

This Court should enter an order enforcing the subpoenas and compelling Zeng and Stephens to produce documents in compliance therewith because the requested documents are highly relevant and proportional to the needs of the case, and Zeng and Stephens cannot show that the subpoenas impose an undue burden or are otherwise improper.

A. **The requested documents are relevant.**

Zeng and Stephens object that the requested documents are irrelevant to the issues in the Delaware Litigation because Garner and the putative class did not view, access, or rely on the requested documents and instead base their claims solely on the published IIT Study. Warlich Decl. Ex. H, at 3–6. Zeng and Stephens' objection is without merit.

5

Garner claims that GPS falsely represented that its products do not produce harmful byproducts, including VOCs. Dkt. 1, ¶ 165. To succeed on Garner's sole remaining claim for deceit, Garner must prove GPS's representation that its products do not produce harmful byproducts is false. *Yarger v. ING Bank, FSB*, 285 F.R.D. 308, 327 (D. Del. 2012). Put differently, Garner must prove that GPS's products produce harmful byproducts. Garner's only evidence that GPS's products produce harmful byproducts is the IIT Study. Dkt. 1, at 40–45 & n.81; Warlich Decl. Ex. B, at 143:13–20, 187:7–20, 192:4–5, 194:4–20. Contrary to Zeng and Stephens' contention, the other studies that specifically tested GPS's technology did not find an increase in byproducts or VOCs. Warlich Decl. Ex. B, at 175:11–176:5, 186:3–14, 187:7–20; Ex. I (Boeing Study) at GPSDE_0200059373 ("There remains significant interest in air ionization due to lack of byproduct production . . . ."); Ex. J (Trane Report) at GPSDE_0200048482 (finding no increase in VOCs). Accordingly, the reliability and accuracy of the IIT Study is highly relevant to Garner's claim and GPS's defense thereto, and the underlying data, tests, notes, and communications regarding the same are directly relevant to the IIT Study's reliability and accuracy. The same is true of the Corrigendum to the IIT Study and the Second IIT Study, which contradicted the conclusions of the previous IIT Study. Warlich Decl. Ex. B, at 198:17–200:9, 201:2–202:18; Exs. D–E.

Therefore, the requested documents are relevant and within the scope of Rule 45.

**B.** **Stephens and Zeng cannot show that production imposes an undue burden.**

Zeng and Stephens further object to the subpoenas as unduly burdensome. Warlich Decl. Ex. H, at 2, 4, 6. Zeng and Stephens cannot meet their obligation to show that production would impose an undue burden.

"The non-party opposing the subpoena must establish that it is unduly burdensome." *Wi-LAN, Inc. v. LG Elecs., USA, Inc.*, 2011 U.S. Dist. LEXIS 4606, at *5 (N.D. Ill. Jan. 18, 2011).

6

The Seventh Circuit looks to a number of factors when determining whether a subpoena imposes an undue burden, including whether: (1) the information requested is relevant; (2) the party requesting the information has a substantial need for the documents; (3) the document request is overly broad; (4) the time period the request covers is reasonable; (5) the request is sufficiently particular; and (6) whether compliance with the request would, in fact, impose a burden on the subpoenaed party. *Am. Soc. of Media Photographers, Inc. v. Google, Inc.*, 2013 U.S. Dist. LEXIS 64041, at *5 (N.D. Ill. May 6, 2013).

Stephens and Zeng have failed to provide any basis to support their claim that the subpoenas are unduly burdensome. As an initial matter, the fact that Zeng and Stephens previously produced some of the requested documents in other litigation belies Stephens and Zeng's contention that the subpoenas impose an undue burden. Warlich Decl. ¶ 18. Further, as discussed above, the subpoenas seek relevant documents and, critically, the documents sought are not obtainable from Garner. *Breuder v. Bd. of Trs.*, 2020 U.S. Dist. LEXIS 144272, at *13 (N.D. Ill. Aug. 12, 2020) (holding that non-party failed to show the subpoena imposed an undue burden where the information sought was relevant and not obtainable from a party). Stephens and Zeng have not provided any explanation or evidence to support their claim of undue burden. Stephens and Zeng's boilerplate, conclusory objections are insufficient to satisfy their obligation to show that the subpoenas impose an undue burden. *Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, 2014 U.S. Dist. LEXIS 55425, at *16 (C.D. Ill. Apr. 22, 2014) ("The non-party objecting to a subpoena on the basis of undue burden must present affirmative and compelling proof of the burden.").

C. **Zeng's and Stephens' status as academics or scientists does not excuse them from complying with a proper subpoena.**

Zeng and Stephens object that the subpoenas chill and infringe academic freedom, relying on *Dow Chemical Co. v. Allen*, 672 F.2d 1262 (7th Cir. 1982). Warlich Decl. Ex. H, at 7–8. Zeng and Stephens' reliance on *Dow Chemical* is misplaced, and that decision supports that the subpoenas at issue here do not present the concern of chilling academic freedom.

In *Dow Chemical*, the Environmental Protection Agency ordered the emergency suspension of certain herbicides manufactured by Dow Chemical Company and scheduled hearings to determine whether the herbicides' registration should be cancelled. *Id.* at 1266. The EPA's order relied in part on evidence from one of four ongoing research studies at the University of Wisconsin regarding the health effects and toxicity of a specific chemical compound at four concentration levels. *Id.* In advance of the cancellation hearings, Dow served subpoenas on the University of Wisconsin researchers requesting all notes, reports, working papers, and raw data related to two of the four ongoing toxicity studies for possible use at the cancellations hearings. *Id.* at 1265–66. The researchers resisted compliance, and Dow moved to enforce the subpoenas. *Id.* at 1266.

The district court denied Dow's motion to enforce the subpoenas, concluding that the probative value of the information sought was minimal and it did not outweigh the substantial burden that the subpoenas would impose on the researchers. *Id.* at 1269. On appeal, the Seventh Circuit affirmed. *Id.* at 1266. The court reasoned that the information sought had little probative value because Dow sought to use the information to show that there is a level at which exposure to the chemical compound does not produce any adverse health effects regardless of exposure duration, but the record was undisputed that it was not possible to conclude even tentatively that such a cumulative no-effect level existed at that point in the studies. *Id.* at 1268 & n.8, 1272. In

8

other words, Dow sought the information for the purpose of supporting a conclusion that the information undisputedly could not support. The court further reasoned that Dow did not have a substantial need for the information because the EPA did not intend to rely on or introduce the studies and documents that Dow requested at the cancellation hearings. *Id.* at 1272. And finally, the court held that the subpoenas would impose an undue burden on the researchers for two reasons. First, the medical research at issue was incomplete and had not gone through peer review, and premature disclosure of incomplete research—especially medical research—would jeopardize the studies and ongoing research. *Id.* at 1273. Second, the court concluded that the subpoenas chilled the exercise of academic freedom, reasoning that "enforcement of the subpoenas would leave the researchers with the knowledge *throughout continuation of their studies* that the fruits of their labors had been appropriated by and were being scrutinized by a not-unbiased third party whose interests were arguably antithetical to theirs" and "the researchers could reasonably fear that additional demands for disclosure would be made in the future." *Id.* at 1276 (emphasis added).

The facts of *Dow Chemical* are clearly distinguishable from the instant case. Unlike the information sought in *Dow Chemical*—which had little probative value because it was ongoing, incomplete, and inconclusive—here, the information sought has high probative value because it directly relates to the validity, accuracy, and reliability of Garner's purported evidence that GPS's products produce byproducts. Similarly, while the EPA in *Dow Chemical* did not rely on the studies to support cancellation, Garner relies on Zeng and Stephens' research and studies to claim that GPS's products produce byproducts and GPS's representations to the contrary are false. With respect to the burden of the subpoenas, unlike the research at issue in *Dow Chemical*—medical research that was incomplete—the research and studies at issue here are complete and went

through peer review. Thus, unlike *Dow Chemical*, here, the subpoenas at issue do not present the concern that premature scrutiny would create a potential for chilling academic freedom.

Moreover, Zeng and Stephens' argument that the subpoenas chill academic research is belied by evidence demonstrating that they knew prior to publishing the IIT Study that it would likely subject them to litigation. Warlich Decl. Ex. K, at 10–12 (December 15, 2020 email from Stephens stating he and another author of the IIT Study "just got off a call with IIT's legal counsel seeking some advice on publishing this . . . Highest risk [of a lawsuit] would be if there's a fundamental flaw in the results or data, or some unintentional error or assumption. We do have to consider—this is a commercial entity. If it got a lot of press and seriously damaged profits, they could spend $$$ and force to retract the paper or say something that qualifies it or what have you. Don't know enough about the impact the paper could have. . . . we could personally get sued and that involves attorney costs and so on. . . . The journal would be the named party in a suit and we would be the 'et al.'"). Notwithstanding that Stephens had actual knowledge that publication of the IIT Study subjected him and the other authors to a potential lawsuit, GPS has not sued Stephens, Zeng, or any other author Instead, GPS simply seeks to obtain documents and information that it may use to defend itself against the putative class action filed against it as a result of and in reliance on Zeng and Stephens' research. Therefore, this Court should enforce the subpoenas and compel Zeng and Stephens to comply therewith.

## V. CONCLUSION

For the reasons set forth above, GPS respectfully requests that the Court enter an order enforcing the subpoenas and compelling Dr. Brent Stephens and Yicheng Zeng to produce all responsive documents in compliance therewith.

Dated: May 17, 2023                                     */s/ Tammy L. Adkins*

Tammy L. Adkins (IL 6230732)
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, Illinois 60601-1818
Telephone: (312) 750-5727
Email: tadkins@mcguirewoods.com

*Counsel for Defendant*
*Global Plasma Solutions, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of May, 2023, I caused a true and correct copy of the foregoing GLOBAL PLASMA SOLUTIONS, INC.'S BRIEF IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS, with any and all attachments, to be served upon all counsel of record in this action, as listed below, via electronic mail and United States Postal Service first class mail:

<div style="display:flex">

Michael J. Farnan
Brian E. Farnan
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Steffan T. Keeton
THE KEETON FIRM LLC
100 S. Commons, Ste. 102
Pittsburgh, PA 15212
stkeeton@keetonfirm.com

Michael A. Mills
THE MILLS LAW FIRM
52 D Brian Hollow Ln
Houston, TX 77027
mickey@millsmediation.com

Dennis C. Reich
REICH & BINSTOCK LLP
4265 San Felipe, Suite 1000
Houston, Texas 77024
dreich@reichandbinstock.com

</div>

*Attorneys for Plaintiff and the Classes*

W. Tyler Chastain (via electronic mail only)
BERNSTEIN STAIR & MCADAMS LLP
116 Agnes Road
Knoxville, Tennessee 37919
wtylerc@bsmlaw.com

*Co-Counsel for Defendant Global Plasma Solutions, Inc.*

Dated: May 17, 2023

      */s/ Tammy L. Adkins*
Tammy L. Adkins

*Counsel for Defendant*
*Global Plasma Solutions, Inc.*