# EXHIBIT H



**Phillip J. Zisook**
Of Counsel

300 S. Wacker Drive
Suite 1500
Chicago, IL 60606
D 312.853.8451
F 312.648.1212
E phil.zisook@sfbbg.com

April 18, 2023

**VIA E-MAIL**

RMuckenfuss@mcguirewoods.com
KWarlich@mcguirewoods.com

Robert Muckenfuss
Kelly A. Warlich
McGuireWoods LLP
201 N. Tryon Street, Suite 3000
Charlotte, NC 28202-2146

> **Re:** Global Plasma Solutions, Inc.'s Subpoenas to Brent Stephens and Yicheng Zeng in *Garner v. Global Plasma Solutions, Inc*., Case No. 21-665 (SB)

Dear Mr. Muckenfuss and Ms. Warlich,

As you know, this firm represents Dr. Brent Stephens and Yicheng Zeng with regard to the Subpoenas to Produce Documents which you issued to them (the "Subpoenas") on or about April 6, 2023 on behalf of Global Plasma Solutions, Inc. ("GPS"), the defendant in the above-referenced case (the "Action" or the "Case"). Our objections to the propriety and unduly overbroad scope of the Subpoenas follow. For the reasons stated below, I am hopeful that you will consider withdrawing the Subpoenas in furtherance of the parties not expending unnecessary sums to litigate their substantial infirmities.

**General Objections**

**1. The Subpoenas are Improper Pursuant to Fed. R. Civ. P. 45(d)(1)**

On their faces, the Subpoenas, directed to *non-party and non-designated expert* academics and scientists, seeking *all* confidential research, data, studies, tests, documents, communications, and drafts, referring or relating to "ionization," GPS, and/or any of GPS' products over a four-year period (from "March 1, 2019 to present"), are patently overbroad and impermissibly chill academic freedoms protected by the First Amendment. In addition, the Subpoenas request documents which are unrelated to material issues in the Action, namely (i) whether *GPS's* own promotional claims concerning the efficacy of its products, are materially true or false and (ii) whether the plaintiffs reasonably relied upon GPS' representations. The requests are also calculated to harass and retaliate against Stephens and Zeng for their scientific research and studies, which have concerned

**FORWARD THINKING | STRATEGIC COUNSEL**



Mr. Robert Muckenfuss
Ms. Kelly Warlich
April 18, 2023
Page 2

*one* of GPS' needlepoint bipolar ionizer products, not the seven products and GPS' representations concerning them alleged in the Complaint (Complaint ¶1, fn. 1).

Overbreadth and proportionality are fundamental reasons the Subpoenas are unenforceable against Dr. Stephens and Ms. Zeng. They are non-parties to the Action and have no relationships with the plaintiffs or GPS. They also have not been retained by any party to provide an expert opinion or report in the Case. They are academics and scientists and concentrate their studies in air quality issues in buildings. Dr. Stephens is a recognized authority in measuring and analyzing energy use and air quality in buildings, including indoor air filtration systems, a Professor at the Illinois Institute of Technology in Chicago, IL ("IIT"), and the Department Chair of IIT's Department of Civil, Architectural, and Environmental Engineering. Yicheng Zeng is a third-year PhD student at IIT, working with Dr. Stephens in multiple air quality studies, experiments, and scholarly research at IIT. Courts have recognized that non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue, as non-parties have a different set of expectations than parties. *Craigville Telephone Co. v. T-Mobile United USA, Inc.*, 2022 U.S. Dist. LEXIS 226705, *3 (N.D. Ill. Dec. 16, 2022). Indeed, as in *Craigville Telephone Co.*, neither Stephens nor Zeng have a horse in this race. *Id*.

The Subpoenas are a transparent effort to obtain years' worth of Dr. Stephens' and Ms. Zeng's academic work product, research, and analysis, concerning "ionization," GPS, GPS's products, or "NPBI," including but not limited to raw data, "lab notes or similar materials," "test protocols," communications relating to their studies, "draft reports or summaries," peer review comments, editor comments, and documents which show testing "set-up and other parameters used, including any controls employed," notwithstanding that Stephens and Zeng are neither parties nor retained experts in the Case. GPS additionally seeks the compelled production of "all documents and communications related to the efficacy of GPS' products or NPBI against pathogens, viruses, or bacteria" and "all documents and communications related to the production or nonproduction of byproducts associated with GPS' products or NPBI." GPS' efforts to compel such *pro bono* expert disclosures, including nonpublished underlying data, lab protocols, communications, peer review comments, and drafts, are objected to and will be vigorously opposed should GPS attempt to enforce the Subpoenas. Contrary to GPS' view, research scientists do not operate as public libraries, where their underlying scientific studies, research, raw data, protocols, tests, communications, peer review comments, and drafts can simply be ordered by the general public on demand.

The plaintiffs' Complaint references a single 2021 *published* study of Dr. Stephens and Ms. Zeng (the "IIT Study") pertaining to tests on *one* GPS product. The IIT Study is publicly available, and your client has it. The Complaint also references seven other published papers of other academics/researchers concerning the efficacy of GPS' products. That the plaintiffs have chosen to reference multiple published articles relating to academic studies and their own opinions



Mr. Robert Muckenfuss
Ms. Kelly Warlich
April 18, 2023
Page 3

derived from those published sources, does not result in GPS having an unfettered right to obtain through subpoenas to nonparties, non-published data, communications, raw data, lab protocols, peer review documents, and drafts relating to the published articles or *other studies not referenced in the Complaint*, which the plaintiff class does not allege that it viewed or accessed, much less relied upon. Moreover, GPS does not require such underlying, confidential, academic source materials *to prove the truth of its own marketing and promotional statements* which are at issue in the Case. Courts have refused to enforce subpoenas, where the material sought exceeds the scope of the Complaint at issue. *See Craigville Telephone Co. v. T-Mobile United USA, Inc.,* 2022 U.S. Dist. LEXIS 226705 at *7 (N.D. Ill. 2022) ("Certain of Plaintiffs' requests exceed the scope of Plaintiffs' complaint as pled and those requests therefore are not proportional to the needs of this case within the meaning of Federal Rule of Civil Procedure 26(b)(1).")

### A. Dr. Stephens' and Ms. Zeng's Research Studies and Prior Subpoenas GPS issued to Them

Dr. Stephens began his academic career at IIT in 2012. He received his Ph.D. in Civil Engineering in 2012 and his M.S.E. in Environmental and Water Resources Engineering in 2009, both from the University of Texas at Austin. Dr. Stephens received his B.S.E. in Civil Engineering from Tennessee Technological University in 2007. His research interests throughout his academic career and pursuit of his masters and doctorate degrees concentrate in energy, environmental, and sustainability issues within the built environment. Much of his work over the course of his academic career has focused on developing and applying novel methods of measuring and analyzing energy use and air quality in buildings. Dr. Stephens teaches academic courses at IIT, primarily in architectural and environmental engineering, including CAE 331/513 Building Science, CAE 463/524 Building Enclosure Design, ENVE 576 Indoor Air Pollution, and CAE 553 Measurements and Instrumentation in Architectural Engineering, as well as CAE 110/111 Intro to the Profession I and II.

Ms. Zeng is a third year PhD student at IIT in Dr. Stephens' department. Dr. Stephens and Ms. Zeng have collaborated on several published articles reporting on their joint academic and scientific studies, research and experiments. As you are aware, because of the overbroad nature of similar subpoenas you issued in a prior matter, *Global Plasma Solutions, Inc. v. D Zine Partners, LLC*, et al., No 3:21 CV-0884-M, (N.D. TX), Dr. Stephens and Ms. Zeng both objected to the majority of those subpoenas' requests. Indeed, those requests demanded many of the same unduly broad categories of documents included in the current Subpoenas. Ultimately Dr. Stephens and Zeng agreed to produce a small number of documents responsive to a reduced subset of those subpoenas' requests. You agreed to the substantially reduced scope of the subpoenas, and to Dr. Stephens' and Ms. Zeng's narrowly tailored production. Nonetheless, in the current Subpoenas, you again demand the production of a remarkably overbroad universe of documents related to Dr. Stephens' and Ms. Zeng's academic studies, experiments, raw data and research, including communications, peer review documents, comments from editors, lab notes, and test protocols,



Mr. Robert Muckenfuss
Ms. Kelly Warlich
April 18, 2023
Page 4

analyses, tests, investigations, surveys, and other documents, but which have no material relationship to the plaintiffs' Complaint and the Case your current Subpoenas allegedly concern. The plaintiffs' Complaint references only the published reports of multiple scientists' research studies. No underlying test protocols, raw data, lab notes, drafts, peer review comments, or internal communications among researchers are material to the issues defined in the Complaint, particularly when the researchers in question are non-parties and non-designated experts and are presenting no opinions predicated upon their scientific research.

### B. The Parameters of the Garner Lawsuit and their Relation to the Subpoenas

The *Garner* Complaint was filed on May 7, 2021. No effort to serve subpoenas on Dr. Stephens or Ms. Zeng in the Action was made until April 6, 2023 notwithstanding that a discovery cut-off date of November 22, 2022 and an opening expert disclosure date of January 6, 2023 were set by the court on April 7, 2022 (Docket Entry 25). These dates were continued by stipulation to set fact discovery closure on April 24, 2023 and opening expert disclosures on June 5, 2023. (Docket Entry 49) To date, no party in the Case has identified or retained Dr. Stephens or Ms. Zeng as expert witnesses.

The Complaint consists of 106 pages and the only count moving forward against GPS is Count I (Deceit and Fraudulent Concealment). Plaintiff's cause of action is limited to the Defendants' alleged false representations and concealment regarding the performance and quality of GPS' Products, the quality of Defendants' brand, the Products' capabilities and benefits, and the Products' defects. Plaintiffs allege that GPS knew or should have known of the "defects and misrepresentations of the capabilities and benefits of the Products but failed to disclose these facts prior to or at the time it marketed Products and sold them to consumers." (Complaint ¶183).

Plaintiffs' allegations are based on GPS' promotional statements regarding its seven products and their performance. (See Complaint, paragraphs 2, fn.1, 15-17, 50-62). Plaintiff cites to only one published and generally available scholarly article in which Zeng and Stephens were co-authors in 2021, which stated that in the experiment, the particular GPS ionizer tested was "ineffective in addressing the air pollutants that it's (sic) advertised to remove from the space." (Complaint ¶78).

That published article and the Complaint's few references to it, do not support the Subpoenas' wholesale intrusion on Stephens' and Zeng's academic freedom generally or the compelled production of "drafts of the IIT Study, comments from peer reviewers or editors, raw data sets, lab notes, and test protocols." (Subpoena Request No. 1). The plaintiffs do not base their claims on *any* non-public peer review or editor comments, raw data sets, lab notes, test protocols, other studies, or research of Stephens and Zeng, but *only* on published academic studies of multiple scientists and researchers. In order to establish a claim for fraud, Plaintiffs in the *Garner* case



Mr. Robert Muckenfuss
Ms. Kelly Warlich
April 18, 2023
Page 5

must show that they acted in justifiable reliance on GPS' representations made about its own products, not on any of the non-published data, lab protocols, communications, drafts, or peer review comments, relating to academic studies conducted by Mr. Stephens or Ms. Zeng, which plaintiffs never saw.

In addition, the Subpoenas request "all documents and communications relating to a published Second IIT Study concerning the same GPS ionizer, including but not limited to drafts, comments from peer reviewers or editors, raw data sets, lab notes, and test protocols" even though the Complaint does not *mention,* nor is there an allegation that plaintiffs relied upon, a Second IIT Study, much less any underlying non-public documents related to it. (Subpoena Request #2). Unpublished research, tests, protocols, notes and communications of non-party, non-fact witnesses who have not been designated as experts, and whose non-published background research, analysis, opinions, drafts, and reviews, were not seen, much less relied upon by a party claiming fraud, are not subject to being raided and taken under compulsion through subpoenas by a party to obtain uncompensated expert analysis and confidential data. Furthermore, courts have specifically struck down subpoena language where they seek "from a non-party, swaths of information described in superlatives such as '*all* communications with … *any* other third-party *referring or relating to* [the] Litigation." *Craigville Telephone Co. v. T-Mobile United USA, Inc.*, 2022 U.S. Dist. LEXIS 226705 at *6 (N.D. Ill. Dec. 16, 2022).

The published 2021 IIT Study of Stephens and Zeng cited by plaintiffs in the Complaint, pertains to a single GPS product, the GPS-FC48 AC needlepoint bipolar ionization device specifically, and not "GPS, GPS's products, or "NPBI ionization devices, generally. The Subpoenas however, demand "all studies, research, surveys, reviews, analyses, tests, or other investigations" regarding such generic categories conducted by Stephens and/or Zeng from 2019 to the present. (Subpoena Request #3). The Subpoenas' "grab everything, including the kitchen sink" approach further requests "all documents and communications related to each study, research, survey, review, analysis, test, or other investigation identified in response to Request No. 3, including but not limited to raw data; draft reports or summaries; lab notes or similar materials; comments from peer reviewers or editors; and documents sufficient to show the testing set-up and other parameters used, including any controls employed." (Subpoena Request #4). Similarly, the Subpoenas demand the production of "all documents and communications related to the efficacy of GPS's products or NPBI against pathogens, viruses, or bacteria" (Subpoena Request #5) and "all documents and communications related to the production or nonproduction of byproducts associated with GPS's products or NPBI" (Subpoena Request #6), notwithstanding that such studies, data, documents and communications are beyond Stephens' and Zeng's sole study concerning one GPS product cited in the Complaint. (Compl. ¶¶76-79). Courts have specifically held that such overbroad requests which "cover too much territory with language requiring [the non-party] to produce 'all documents' that 'refer to or relate to' a particular topic, or 'all communications'. . . are facially overbroad." *Craigville Telephone Co.* at *6.



The Subpoenas further request "all documents and communications related to the Corrigendum," a less than one-half page published modification to Stephens and Zeng's published IIT Study cited in the Complaint, consisting of one correction and one clarification. (Subpoena Request No. 7). The correction expressly remedied an erroneous transposition of titles to two columns in a chart of supplemental data in a supplemental appendix to the Study itself. The primary text of the Study was accurately identified and labeled. The clarification also explained why certain compounds were categorized as they were in the Study. The Corrigendum is publicly available and there is no basis for GPS to pry into immaterial non-public documents and communications which were not cited by, seen, alleged, known, or relied upon by the plaintiffs. As such, said information would be wholly irrelevant to any of GPS' defenses to Plaintiff's deceit and fraudulent concealment claim.

The Subpoenas' requests constitute an unwarranted and intrusive fishing expedition to gather information about Dr. Stephens' and Ms. Zeng's scholarly work in the field of air quality research, particularly considering the fact that they are non-parties and not designated experts in the litigation. The Subpoenas also request the production of such boundless documents fifteen days after Dr. Stephens was served and six days after counsel accepted service on behalf of Zeng. This is in no way reasonable, much less humanly possible, even if the requests were significantly narrowed, much less appropriate at all. Given the potential universe of responsive documents and the unlimited scope of the Subpoenas, the time, cost, and burden required to respond to the Requests is extreme, excessive, and unduly burdensome even if the requests were material, which they are not.

In determining whether a subpoena imposes an undue burden or is proportional, a court determines whether the burden of compliance exceeds the benefit of the material sought. *Northwestern Mem'l Hosp. v. Ashcroft,* 362 F. 3d 923, 927 (7th Cir. 2004). Non-party status "is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. *Parker v. Four Seasons Hotels, Ltd.,* 291 F.R.D. 181, 188 (N.D. Ill. 2013) (citing *Robinson v. Morgan Stanley,* 210 U.S. Dist. LEXIS 25072, 2010 WL 100 1005736 at *2-3 (N.D. Ill. Mar. 17, 2010). Courts give special weight to unwanted burdens thrust upon non-parties such as Dr. Stephens and Ms. Zeng, when balancing competing needs." *Id.* Factors to be considered include "the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the request and the burden imposed on the subpoenaed party." *Id.* A subpoena is also properly quashed if it seeks duplicative or cumulative material or is obtainable from other more convenient and less burdensome sources. Fed. R. Civ. Proc. 26(b)(2). In this case, GPS' Subpoenas are necessarily overbroad -- they demand that both Stephens and Zeng separately search for and produce identical documents relating to the same academic studies. The amorphous and unduly broad nature of the Subpoenas' Requests, far beyond any allegations in the Complaint pertaining to Stephens, Zeng or their single published research



Mr. Robert Muckenfuss
Ms. Kelly Warlich
April 18, 2023
Page 7

study referenced in the Complaint, render the value of compliance questionable and the burden of compliance on the part of Dr. Stephens and Ms. Zeng, excessive.

Courts across the country recognize that a non-party subpoena recipient's burden of compliance is a primary factor to be considered both in terms of whether a subpoena is reasonable, and narrowly tailored. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). *See also* F.R. 26(b). Accord, *Rossman v. EN Engineering, LLC,* 467 F. Supp.3d 586, 891-92 (N.D. Ill. 2020). ("Under the Federal Rules of Civil Procedure, the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs. Accordingly, the attorney choosing to issue a subpoena must take reasonable steps to avoid imposing undue burden or expenses on a non-party subject to the subpoena.") *See,* Rule 45(d)(1). The limitless scope and unreasonably narrow compliance dates set forth in GPS' Subpoena stand this Rule on its head. *See also, e.g., Little v. JB Pritzker for Governor,* 2020 WL 1939358, at *1 (N.D. Ill. 2020); *HTG Capital Partners, LLC v. Doe(s),* 2015 WL 5611333 at *3 (N.D. Ill. 2015); *Parker v. Four Seasons Hotels, Ltd.,* 291 F.R.D. 181, 188 (N.D. Ill. 2013); *United States v. Amerigroup Illinois, Inc.,* 2005 WL 3111972, at *4-5 (N.D. Ill. 2005); *United States ex rel. Tyson v. Amerigroup Illinois, Inc.,* 2005 WL 311972 at *4 (N.D. Ill. 2005); *Uppal v. Rosalind Franklin Univ. of Med. & Sci.,* 2015 WL 5026228, at *2 (N.D. Ill. 2015).

### 2. The Subpoenas Chill and Infringe Upon Academic Research

On a more fundamental level, the Subpoenas on their face demonstrate that they are an unwarranted intrusion upon academic freedom designed to obtain free research work from non-designated experts or, at worst, to annoy, frustrate, harass and intimidate academics whose research opinions are inconvenient for GPS. Infringement of academic and research freedom is an independent undue burden to a non-party subpoena recipient and violates the First Amendment. *Dow Chemical v. Allen*, 672 F.2d 1262, 1276 (7th Cir. 1982) (subpoena to non-party academic researchers which would have potentially compelled "virtually every scrap of paper" concerning a study was unduly burdensome and threatened chilling academic freedom). As the Court in *Dow Chemical* found, "academic freedom … has long been viewed as a special concern of the First Amendment." *Id*. at 1274. The Court emphasized, "whatever constitutional protection is afforded by the First Amendment extends as readily to the scholar in the laboratory as to the teacher in the classroom." *Id*. at 1275. Accordingly, the *Dow Chemical* court found, "to prevail over academic freedom, the interests of government must be strong and the extent of intrusion carefully limited." *Id*. The Court quoted Justices Frankfurter and Harlan, who found in *Sweezy v. New Hampshire*, 354 U.S. 234 (1957) that "academic inquiries … must be left as unfettered as possible. Political power must abstain from intrusion into this activity of freedom, pursued in the interest of wise government and the people's well-being, except for reasons that are exigent and obviously compelling." *Id.*



Mr. Robert Muckenfuss
Ms. Kelly Warlich
April 18, 2023
Page 8

Incredibly, the GPS Subpoenas seek the compelled production of non-public information, studies, communications, research, peer review, lab protocols, and raw data from non-party/non-designated experts, to secure uncompensated expert opinions and underlying academic analysis. As stated above, this is the second time GPS has sought to compel through subpoena the production of every analysis, test, raw data, compilation, document and communication in the possession of Dr. Stephens and Ms. Zeng relating to GPS and any of its products. Indeed, GPS attempted to do so on a third occasion in the defamation case, *Global Plasma Solutions Inc. v. Elsevier*, No. 3:22-CV-00034-RJC-DSC (W.D. N. Carolina), until GPS was reminded that it did not have the right to propound discovery. The *Dow Chemical* Court cautioned:

> (E)nforcement of the subpoenas would leave the researchers with the knowledge throughout continuation of their studies that the fruits of their labors had been appropriated by and were being scrutinized by a not-unbiased third party whose interests were arguably antithetical to theirs. Indeed, it is probably fair to say that the character and extent of intervention would be such that, regardless of its purpose, it would 'inevitably tend to check the ardor and fearlessness of scholars, qualities at once so fragile and so indispensable for fruitful academic labor" (citation omitted). In addition, the researchers could reasonably fear that additional demands for disclosure would be made in the future. If a private corporation can subpoena the entire work product of months of study, what is to say further down the line the company will not seek other subpoenas to determine how the research is coming along? To these factors must be added the knowledge of the researchers that even inadvertent disclosure of the subpoenaed data could jeopardize both the studies and their careers. Clearly enforcement of the subpoenas carries the potential for chilling the exercise of First Amendment rights.

672 F.2d at 1276. As was the case in *Dow Chemical*, the GPS Subpoenas threaten substantial intrusion into Dr. Stephens and Ms. Zeng's academic research and chill academic freedom. *Id.* Accord, *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liabl. Litig.*, 2011 U.S. Dist. LEXIS 132056 at **8-9 (S.D. Ill. 2011) ("Scientific research in the medical community affects public health and safety. Therefore, damage to the peer review process can also undermine efforts to improve public health and safety. …(T)he court concludes that to disclose the requested peer review comments would be a burden far greater on the academic and scientific community than the probative value to be gained by the defendant so as to render disclosure appropriate").

### 3. The Subpoenas are improper under Fed. R. Civ. P. 45(d)(3)(B)

Dr. Stephens and Ms. Zeng are not only *not* parties to the Litigation, neither has not been retained by any party as an expert witness. Notwithstanding their status as non-parties and non-



Mr. Robert Muckenfuss
Ms. Kelly Warlich
April 18, 2023
Page 9

experts in this Case, the Subpoenas seek the disclosure of documents and information that have no connection with the specific allegations in the Complaint relating to Stephens' and Zeng's scientific research and published report referenced in the Complaint. Compliance with the Subpoenas would also require disclosures of confidential research information, if not also trade secrets or other information that could be considered developmental or commercial in nature. Rule 45(d)(3)(B) prohibits subpoenas which seek such information. See *Dow Chemical*, 672 F.2d 1262 at 1276.

The *Dow Chemical* Court's description of a subpoena's intrusion and chill of academic freedom through overbroad subpoenas is prescient. This is the third time GPS has attempted to bombard Dr. Stephens and Ms. Zeng with intrusive subpoenas regarding their scientific research and testing. In each, Stephens and Zeng were non-parties and non-designated experts. In each, GPS never offered to pay for the time and efforts of compliance with the subpoenas. In each, GPS demanded the production of extensive, immaterial and confidential academic research, sources, and data.

Presumably, due to pending Court deadlines, GPS has already retained experts to opine on the truthfulness of its own promotional statements at issue in the Complaint. Accordingly, in addition to being overbroad, GPS' Subpoenas are unnecessary and inappropriate.

Lastly, the references to Dr. Stephens and Ms. Zeng's 2021 IIT Study are sporadic throughout the Complaint. There are at least seven other academics and scientists whose published reports on air quality and GPS' products are also cited throughout the Complaint. The number of multiple published studies questioning the efficacy of GPS' products is further demonstrative of the fact that GPS' attempts to pry into underlying data, communications and research for Dr. Stephens and Ms. Zeng's research is unnecessary. The plaintiffs' claims cite only to *published* scientific articles. Nowhere do plaintiffs argue that they relied on unpublished materials when they purchased GPS' products. As such, the Subpoenas' requests exceed the scope of the Complaint and demand documents and information that are irrelevant to the material issues in plaintiffs' complaint. In addition, GPS' attempts to compel the production of non-published raw data, drafts, and peer review materials is immaterial to Plaintiffs' alleged beliefs predicated upon multiple published reports and are immaterial to GPS proving the truth of its own promotional claims.

**Specific Objections and Responses**

**Request No. 1**
Stephens and Zeng specifically object to Request No. 1 on the basis that it is overly broad, unduly burdensome, unlimited in time, and duplicative of prior subpoenas. Objecting further, Request No. 1 seeks "protected matter" prohibited by Rule 45(d)(3).



Mr. Robert Muckenfuss
Ms. Kelly Warlich
April 18, 2023
Page 10

**Request No. 2**

Stephens and Zeng specifically object to Request No. 2 on the basis that it is overly broad, unduly burdensome, unlimited in time, and duplicative of prior subpoenas. Objecting further, Request No. 2 seeks "protected matter" prohibited by Rule 45(d)(3).

**Request No. 3**

Stephens and Zeng specifically object to Request No. 3 on the basis that it is overly broad, unduly burdensome, unlimited in time and scope, irrelevant to the issues in Garner's lawsuit, not proportional to the needs of the case and not reasonably calculated to lead to discoverable evidence. Further responding, the request seeks "protected matter" prohibited by Rule 45(d)(3).

**Request No. 4**

Stephens and Zeng specifically object to Request No. 4 on the basis that it is overly broad, unduly burdensome, unlimited in time and scope and duplicative of prior subpoenas. Objecting further, the material sought in Request No. 4 is irrelevant to the issues in Garner's lawsuit, not proportional to the needs of the case and not reasonably calculated to lead to discoverable evidence. Further responding, the request seeks "protected matter" prohibited by Rule 45(d)(3).

**Request No. 5**

Stephens and Zeng specifically object to Request No. 5 on the basis that it is overly broad, unduly burdensome, unlimited in time and scope and duplicative of prior subpoenas. Objecting further, the material sought in Request No. 5 is irrelevant to the issues in Garner's lawsuit, not proportional to the needs of the case and not reasonably calculated to lead to discoverable evidence. Further responding, the request seeks "protected matter" prohibited by Rule 45(d)(3).

**Request No. 6**

Stephens and Zeng specifically object to Request No. 6 on the basis that it is overly broad, unduly burdensome, unlimited in time and duplicative of prior subpoenas. Objecting further, the material sought in Request No. 6 is irrelevant to the issues in Garner's lawsuit, not proportional to the needs of the case and not reasonably calculated to lead to discoverable evidence. Further responding, the request seeks "protected matter" prohibited by Rule 45(d)(3).

**Request No. 7**

Stephens and Zeng specifically object to Request No. 7 on the basis that it is overly broad, unduly burdensome, unlimited in time and duplicative of prior subpoenas. Objecting further, the material sought in Request No. 7 is irrelevant to the issues in Garner's lawsuit, not proportional to the needs of the case, not reasonably calculated to lead to discoverable evidence and calls for material protected by attorney-client privilege and attorney work product. Further responding, the request seeks "protected matter" prohibited by Rule 45(d)(3).



Mr. Robert Muckenfuss
Ms. Kelly Warlich
April 18, 2023
Page 11

**Conclusion**

    For each of the above reasons, I request that the Subpoenas be voluntarily withdrawn. Should it be necessary to litigate the propriety of the Subpoenas, we reserve the right to seek appropriate sanctions, including attorneys' fees. *See, Little v. JB Pritzker for Governor,* 2020 U.S. Dist. LEXIS 70668 at *23 (sanctions were appropriate for non-party subpoena recipient in conjunction with its motion to quash a facially overbroad subpoena). After you have had an opportunity to review this letter, I would appreciate your confirming whether you will voluntarily withdraw the Subpoenas.

                                                Sincerely,

                                                */s/ Phillip J. Zisook*
                                                Phillip J. Zisook

cc. Kelly Cronin