IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ROBERT S. GARNER**, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**GLOBAL PLASMA SOLUTIONS, INC.**,<br><br>*Defendant.* | CIVIL ACTION NO. 1:23-cv-3097<br><br><br>C.A. No. 1:21-cv-00665-SB<br>Case filed in the United States District Court for the District of Delaware |

## GLOBAL PLASMA SOLUTIONS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS

The day after GPS filed the instant motion, counsel for Zeng and Stephens contacted GPS's counsel regarding the motion. Following additional discussions, GPS agreed to forego RFPs 2, 3, 4, and 5. Decl. Kelly A. Warlich, Exhibit 1. Accordingly, the only RFPs at issue for purposes of the instant motion are RFPs 1, 6, and 7, which seek (a) all documents and communications related to the IIT Study, (b) all documents and communications related to the production or nonproduction of byproducts associated with GPS's products or technology, and (c) all documents and communications related to the Corrigendum. Dkt. 2-7, Exhibit F; Dkt. 2-9, Exhibit G. Nevertheless, Zeng and Stephens' opposition mischaracterizes the subpoenas as requesting all of Zeng's and Stephens' research and related documents over the course of several years. Despite the narrowly tailored RFPs that remain at issue, Zeng and Stephens maintain that the requested documents are irrelevant, impose an undue burden, and are not proportional to the needs of the case. Zeng and Stephens' arguments are without merit, and this Court should compel Zeng and

1

Stephens to produce documents in response to RFPs 1, 6, and 7.[1]

I. **The Subpoenas Seek Highly Relevant Documents.**

Zeng and Stephens contend that the requested documents have only "marginal" relevance. Dkt. 14, at 3. Zeng and Stephens' contention is premised on the notion that the IIT Study, the Corrigendum, and the requested documents related thereto are only relevant to Garner's claim to the extent Garner relied on those documents. Dkt. 14, at 5 ("Garner does not allege that he relied on the IIT Study. Indeed, he testified that he never saw the IIT Study before his April 24, 2023 deposition . . . and was unfamiliar with its content."), 9 ("In order to establish a claim for fraud, Plaintiffs in *Garner* must show that they acted in justifiable reliance on GPS' representations made about its own products, not on 'all' of Stephens' and Zengs' [sic] non-published data, studies, lab protocols, communications, documents, drafts, and peer review or editor comments relating to GPS or its products which plaintiffs never saw and did not refer to in their Complaint."), 13 ("Garner does not claim *anything* with respect to Stephens' and Zengs [sic] 'research and studies.' His Complaint references only their published 2021 IIT Study, which Garner never saw or read.").

Zeng and Stephens' misunderstand the relevance of the IIT Study and Corrigendum to Garner's claim and ignore the critical element of fraud that Garner must prove before one even gets to the element of reliance: falsity. As discussed in GPS's supporting brief, Garner must prove GPS's representation that its products do not produce harmful byproducts is false—that is, Garner must prove that GPS's products produce harmful byproducts. *Yarger v. ING Bank, FSB*, 285

---

[1] Garner filed an opposition to GPS's motion to compel, arguing that GPS seeks to use discovery in this case for purposes of a separate lawsuit. Dkt. 12. Putting aside that Garner's opposition has no factual basis whatsoever, this Court must disregard Garner's opposition because Garner does not have standing to object to or quash a subpoena absent a legitimate interest on which the subpoena infringes, and Garner does not identify any such interest. *E.g.*, *Deleon-Reyes v. Guevara*, 2020 U.S. Dist. LEXIS 99772, at *8–9 (N.D. Ill. June 8, 2020).

F.R.D. 308, 327 (D. Del. 2012). GPS demonstrated in its supporting brief that the only evidence Garner contends supports that GPS's products produce harmful byproducts—that is, the only evidence of falsity—is the IIT Study authored by Stephens and Zeng. Dkt. 2, at 6. Zeng and Stephens' opposition is devoid of any response to this argument. Instead, in an attempt to undermine the relevance of the IIT Study and Corrigendum, Stephens and Zeng contend that Garner alleges that GPS falsely represented that its products eliminate viruses and point to allegations that the Boeing and Trane studies concluded that the technology is not effective against viruses. Dkt. 14, at 4. But the alleged falsity of GPS's representations regarding the efficacy of its technology against viruses is a different issue than the alleged falsity of GPS's representation regarding production of byproducts. GPS has never contended that the IIT Study, the Corrigendum, or the requested documents related thereto are relevant to GPS's representations regarding viral efficacy.

      In short, the IIT Study is the only evidence that Garner contends supports the falsity of GPS's representation that its products do not produce harmful byproducts. It necessarily follows that the reliability and accuracy of the IIT Study and Corrigendum thereto are highly relevant to Garner's claim and GPS's defense, and the underlying data, tests, notes, and communications regarding the IIT Study and Corrigendum are directly relevant to their reliability and accuracy. *Architectural Iron Workers' Loc. No. 63 Welfare Fund v. Legna Installers Inc.*, 2023 U.S. Dist. LEXIS 66607, at *9 (N.D. Ill. Apr. 17, 2023) (holding information is relevant "if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence.").

**II.     Stephens and Zeng Fail to Show that Production Imposes an Undue Burden.**

Zeng and Stephens fail to meet their burden to establish that production would impose an undue burden. *Wi-LAN, Inc. v. LG Elecs., USA, Inc.*, 2011 U.S. Dist. LEXIS 4606, at *5 (N.D. Ill. Jan. 18, 2011) ("The non-party opposing the subpoena must establish that it is unduly burdensome.").

Zeng and Stephens argue that the subpoenas are overbroad and not proportional to the needs of the case, contending that GPS requests all documents and communications related to the Second IIT Study, ionization, GPS's products, and NPBI™. Dkt. 14, at 8. As discussed above, however, in subsequent discussions initiated by Zeng and Stephens' counsel after GPS filed the instant motion, GPS agreed to forgo RFPs 2, 3, 4, and 5 such that only RFPs 1, 6, and 7 are at issue. Warlich Decl., Exhibit 1. Thus, pursuant to those RFPs, GPS only seeks: (a) all documents and communications relating to the IIT Study, including drafts, peer reviewer and editor comments, raw data, lab notes, and test protocols, (b) all documents and communications related to the production or nonproduction of byproducts associated with GPS's products or NPBI™, and (c) all documents and communications related to the Corrigendum. Dkt. 2-7, Exhibit F; Dkt. 2-9, Exhibit G. These requests are narrowly tailored to the reliability and accuracy of the IIT Study and Corrigendum and proportional to the needs of the case given that Garner's ability to prove the falsity of GPS's representation regarding byproducts depends solely on the IIT Study and Corrigendum. *Arsberry v. Wexford Health Sources, Inc.*, 2021 U.S. Dist. LEXIS 217636, at *6 (N.D. Ill. Nov. 10, 2021) ("[P]roportionality is not self-defining; it requires a common sense and experiential assessment."); *United States v. Dish Network, L.L.C.*, 2010 U.S. Dist. LEXIS 138210, at *8 (C.D. Ill. Dec. 29, 2010) (stating that in assessing proportionality, courts consider "the

4

amount in controversy, the resources of the parties, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues").

Zeng and Stephens argue that GPS does not have a substantial need for the documents because it published a rebuttal to the IIT Study. Dkt. 14, at 8. But the fact that GPS published a rebuttal to the IIT Study based on the publicly available information in the study itself does not obviate GPS's substantial need for related documents to defend itself against a putative class action alleging fraud. Moreover, Zeng and Stephens assert that the subpoenas are overbroad because Garner did not rely on anything other than the published IIT Study. Dkt. 14, at 8–9. As discussed above, however, this argument is based on a misunderstanding of the IIT Study's relevance: the IIT Study is relevant to falsity, not reliance.

Zeng and Stephens have failed to make any showing that production in response to the three RFPs at issue would impose an undue burden. Zeng and Stephens do not provide any information as to the amount of time it would take to respond to the subpoenas. In fact, they fail to even articulate the volume of responsive documents in their possession, custody, or control. This is insufficient to satisfy Zeng and Stephens' obligation to show an undue burden. *Deleon-Reyes v. Guevara*, 2020 U.S. Dist. LEXIS 99772, at *18 (N.D. Ill. June 8, 2020) ("[The recipient] failed to provide detailed information regarding the burdens it would suffer in responding to the subpoena. . . . That is not the way to address proportionality concerns. Instead, '[a]n objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence.'"); *Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, 2014 U.S. Dist. LEXIS 55425, at *16 (C.D. Ill. Apr. 22, 2014) ("The non-party objecting to a subpoena on the basis of undue burden must present affirmative and compelling proof of the burden.").

In addition, as discussed in GPS's supporting brief, the fact that Zeng and Stephens previously produced some of the requested documents in other litigation belies Stephens and Zeng's contention that the subpoenas impose an undue burden. Dkt. 2-1, at ¶ 18. Zeng and Stephens fail to provide any response to this argument.

Therefore, Zeng and Stephens have failed to meet their obligation to show that the subpoenas impose an undue burden.

### III. The Subpoenas Do Not Impermissibly Infringe on Academic Freedom.

Zeng and Stephens reassert the same argument they made in their written objections: that the subpoenas impermissibly chill and infringe on academic freedom, relying exclusively on *Dow Chemical Co. v. Allen*, 672 F.2d 1262 (7th Cir. 1982). Dkt. 14, at 10–13; Dkt. 2-10. GPS responded to this argument in its supporting brief in which it discussed at length the critical differences between the facts of this case and the facts at issue in *Dow Chemical* that render that decision inapposite. Dkt. 2, at 8–10. Unlike the information sought in *Dow Chemical*—which had little probative value because it was ongoing, incomplete, and inconclusive—here, the information sought has high probative value because it directly relates to the validity, accuracy, and reliability of Garner's purported evidence that GPS's products produce byproducts. Similarly, while the EPA in *Dow Chemical* did not rely on the studies to support cancellation, Garner relies on Zeng and Stephens' research and studies to claim that GPS's products produce byproducts and GPS's representations to the contrary are false. With respect to the burden of the subpoenas, unlike the research at issue in *Dow Chemical*—medical research that was incomplete—the research and studies at issue here are complete and went through peer review. Thus, unlike *Dow Chemical*, here, the subpoenas at issue do not present the concern that premature scrutiny would create a potential for chilling academic freedom. Zeng and Stephens do not provide any response to these

arguments.

IV. **GPS's Motion Was Timely.**

Zeng and Stephens argue that GPS's motion should be denied as untimely because it was filed twenty-three days after the April 24, 2023 deadline for fact discovery. Dkt. 14, at 14–15. GPS's motion was timely because GPS timely served the subpoenas on Zeng and Stephens and promptly filed the motion to compel.

"The Federal Rules of Civil Procedure place no prescribed time limit on the outside date for filing a motion to compel discovery." *Talbert v. City of Chicago*, 2006 U.S. Dist. LEXIS 110295, at *2 (N.D. Ill. Sept. 19, 2006). "[T]here is no principled or mathematical way of determining in advance in every case when a motion to compel should be deemed untimely based on an arbitrarily prescribed number." *Murata Mfg. Co. v. Bel Fuse, Inc.*, 242 F.R.D. 470, 475 (N.D. Ill. 2007). The determination of whether a motion to compel is timely is within the broad discretion of the district court. *Talbert*, 2006 U.S. Dist. LEXIS 110295, at *3.

Garner filed his complaint on May 7, 2021. *Garner v. Global Plasma Solutions, Inc.*, Civil No. 1:21-cv-00665-CFC (D. Del.) ("Delaware Litigation"), Dkt. 1. Following the Court's resolution of GPS's motion to dismiss, on April 7, 2022, the Court entered a Scheduling Order that required the parties to complete fact discovery on or before November 22, 2022. Delaware Litigation, Dkt. 25. On January 3, 2023, the Court extended the discovery deadline to April 24, 2023. Delaware Litigation, Dkt. 49.

On April 5, 2023, counsel for GPS provided copies of the subpoenas to Zeng and Stephens' counsel, but he was not yet authorized to accept service of the subpoenas. Dkt. 14, at Exhibit 6. GPS served Stephens with the subpoena on April 10, 2023. Dkt. 2-8, at Exhibit F-1. Thereafter on April 13, 2023, counsel for Zeng and Stephens accepted service of the subpoena on Zeng's

7

behalf. Dkt. 2-1, ¶ 12. Zeng and Stephens served their objections to the subpoena on April 18, 2023. Dkt. 2-1, ¶ 13. After Garner refused to provide his availability for a deposition in response to GPS's repeated requests, on April 20, 2023, the Delaware court granted GPS's motion to compel Garner's deposition, which occurred on April 24, 2023. Delaware Litigation, Dkts. 60, 61, 64. Garner's testimony during his deposition made clear that the IIT Study is his only evidence that GPS's products produce byproducts. Dkt. 2-3, Exhibit B at 143:13–20, 187:7–20, 192:4–5, 194:4–20. Only nine days later, GPS's counsel contacted counsel for Zeng and Stephens to schedule a meet and confer regarding their objections to the subpoena. Dkt. 14, Exhibit 10. Counsel met and conferred on May 5, 2023. Dkt. 2-1, ¶ 17. GPS filed its motion to compel less than two weeks later on May 17, 2023.

The foregoing demonstrates that GPS timely and diligently sought discovery from Zeng and Stephens, including in filing the motion to compel. GPS provided the subpoenas to Zeng and Stephens' current counsel on April 5, 2023, approximately three weeks before the fact discovery deadline. Due to Garner's refusal to sit for a deposition, GPS did not depose Garner until six days after Zeng and Stephens served their objections to the subpoenas. Thereafter, GPS promptly contacted Zeng and Stephens' counsel to schedule a meet and confer and filed the instant motion less than two weeks following that conference. Accordingly, GPS timely and diligently served the subpoenas and did not exercise any delay in filing the motion to compel and, therefore, this Court should conclude that the motion is timely. *Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 236 (N.D. Ill. 2000) (concluding motion to compel filed after the discovery deadline was timely); *Talbert*, 2006 U.S. Dist. LEXIS 110295, at *3–4, *9 (same); *Bullen v. Thanasouras*, 1993 U.S. Dist. LEXIS 973 (N.D. Ill. Feb. 2, 1993) (granting motion to compel filed two weeks after discovery cutoff).

8

## V. CONCLUSION

For the reasons set forth above and in GPS's supporting brief, GPS respectfully requests that the Court enter an order enforcing the subpoenas and compelling Dr. Brent Stephens and Yicheng Zeng to produce all responsive documents to RFPs 1, 6, and 7.

Dated: June 8, 2023

/s/ Tammy L. Adkins
Tammy L. Adkins (IL 6230732)
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, Illinois 60601-1818
Telephone: (312) 750-5727
Email: tadkins@mcguirewoods.com

*Counsel for Defendant*
*Global Plasma Solutions, Inc.*